**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MARK E. BROWN, )
 )
        Plaintiff, )
 )
v. )   Case No. 10-1096-JTM
 )
UNIFIED SCHOOL DISTRICT NO. 501, )
SHAWNEE COUNTY, STATE OF )
KANSAS, )
 )
        Defendant. )
 )

**MEMORANDUM AND ORDER**

This matter is before the court on plaintiff's motion to compel (Doc. 31) and defendant's related motion for a protective order (Doc. 42). The two motions concern discovery of communications which occurred during the school board's "executive session."[1] Defendant asserts the attorney-client privilege and work product doctrine as reasons for its non-production. Based on the analysis which follows, plaintiff's motion to compel shall be **DENIED** and defendant's motion shall be **GRANTED IN PART**.[2]

---

[1] Kansas law authorizes a school board to conduct an executive session for certain purposes. K.S.A. 75-4319. The two executive sessions addressed in parties' motions involve "consultation with an attorney for the body or agency which would be deemed privileged in the attorney-client relationship." K.S.A. 75-4319(b)(2).

[2] The court finds that oral argument would not be of material assistance to the resolution of either motion.

**Background**

Mr. Brown is a black male who was employed by U.S.D. 501 (in Topeka, Kansas) from 1982 to 1996 as a physical education teacher and, for some of that time, as a basketball coach.[3] He has a history of filing lawsuits against U.S.D. 501 for employment discrimination and his first lawsuit was filed in 1991. (Case No. 91-4011-RDR, District of Kansas). The case proceeded to trial in 1992 with judgment in favor of the school district. Id. Plaintiff appealed and the Tenth Circuit affirmed. (Brown v. U.S.D. 501, 1995 WL 590605 (10th Cir. 1995)(unpublished).

Mr. Brown resigned from U.S.D. 501 in 1996 and moved with his family to Texas. He returned to Kansas in 1999 and, after working one year at another school district, sought employment with U.S.D. 501 which did not hire him. He then filed a second lawsuit against the school district. (04-1193-DWB, District of Kansas). Judge Bostwick concluded that plaintiff's claims were barred by various statutes of limitations and granted U.S.D. 501's motion for summary judgment. Plaintiff appealed and the Tenth Circuit affirmed. (Brown v. U.S.D. 501, 465 F.3d 1184 (10th Cir. 2006)).

---

[3] Plaintiff was apparently removed from coaching the women's basketball team after the school district received allegations that inappropriate sexual comments were made to female student athletes.

In 2009 Mr. Brown applied a second time for employment with U.S.D. 501.[4] He was not hired and was told that he would not be considered for any position with the district. Mr. Brown filed the present lawsuit, alleging that the district's refusal to hire him was based on his race and/or in retaliation for his prior claims of discrimination against the school district.

**Plaintiff's Motion to Compel**

Plaintiff served a request for production on defendant for:

> Any and all documents or communications that evidence, reflect or relate to executive session discussions regarding Mark Brown on September 17 or October 1, 2009.

Production Request No. 3, Doc. 31-2. p. 25. Defendant responded:

> Defendant's counsel objects to producing David P. Mudrick's and Cynthia Lutz Kelly's notes that were taken concurrently with or subsequent to the executive session on September 17 or October 1, 2001, and Mr. Mudrick's outline which he prepared before the October 1, 2009 executive session, because they obtain attorney mental impressions and are protected under the work product doctrine and attorney-client privilege. Defendant is producing a privilege log. Any other responsive documents will be produced.

Doc. 31-3, p. 2. A privilege log immediately followed which listed: (1) three withheld documents, (2) the authors of the documents, (3) the dates created, (4) a general

---

[4] Plaintiff's complaint contains a number of ambiguities concerning the timing of his employment applications. For example, plaintiff alleges that he applied for the position of coach and special education teacher at Highland Park High School on ***July 1, 2009 after*** the school principal "personally offered him the job on ***June 30, 2009.***" It is not clear why an "offer" was extended before plaintiff submitted his application. Similarly, it is not clear why a ***July 1*** application was necessary if a valid employment offer had been extended to plaintiff on ***June 30***.

description/purpose of the documents, and (5) the applicable privileges.

Plaintiff moves to compel, arguing that the three documents are not protected by the attorney-client privilege or the work product doctrine. Defendant counters that the three documents are protected from discovery and also moves for a protective order concerning conversations that took place during the September 17 and October 1, 2009 executive sessions. The circumstances related to the executive sessions and the parties' arguments are discussed in greater detail below.

The general sequence of events leading up to the September 17 and October 1 executive sessions are not in dispute. In September 2009, school board member Janel Johnson asked Superintendent Singer to meet with her and a group of people, none of whom were initially identified. Superintendent Singer subsequently learned that Ms. Johnson's "group" included Mark Brown and his attorney, Larry Michel.[5] Upon learning that Mr. Brown's attorney would be present, Singer requested that Cynthia Lutz Kelly, "the School District Attorney for U.S.D. 501," attend the meeting.

The meeting took place on September 10, 2009 and Mr. Brown provided reasons why the district should rehire him. Mr. Michel also spoke at the meeting and Ms. Kelly made notes that included her mental impressions. The document containing Ms. Kelly's September 10 notes is listed on defendant's privilege log.

The school board sought Ms. Kelly's legal advice concerning the September 10 meeting and Mr. Brown's request for re-employment. On September 17, 2009, Ms. Kelly

---

[5] Mr. Michel represented plaintiff in his 2004 lawsuit against the district.

-4-

attended the school board's "executive session" to provide legal advice to the board concerning Mr. Brown as well as other pending legal matters.[6] Ms. Kelly again took notes that contain her mental impressions. The document containing Ms. Kelly's September 17 notes is also listed on defendant's privilege log.

The board decided during the September 17 executive session to request that David Mudrick, the outside attorney who represented the district in Mr. Brown's 2004 lawsuit, attend the next board meeting to provide legal advice concerning Mr. Brown. Consistent with the board's request, Ms. Kelly asked Mr. Mudrick to attend the October 1, 2009 executive session and provide legal advice to the board concerning "various potential legal issues associated with Mr. Brown's request to be rehired." Doc. 41-2, p. 2.

Mr. Mudrick prepared an outline of the main points he would cover in providing legal advice to the board. The outline states that it is "CONFIDENTIAL & PRIVILEGED" and was prepared in response to the board's request for legal advice. Mr. Mudrick also advised the board before his presentation that he was providing confidential legal advice to the board and reminded those in attendance to keep the information confidential. The outline contains

---

[6] Plaintiff initially argued in his motion to compel that board member Janel Johnson told him that no attorney was present during the September 17 executive session; therefore, no attorney-client privileged communications could have occurred during that meeting. This allegation and argument is troubling because it is based on hearsay and not supported by any affidavit or evidence. Moreover, one of the documents which plaintiff seeks to compel is the collection of notes Ms. Kelly created during the September 17 executive session. Common sense dictates there would not be any "Kelly notes" from the September 17 meeting to compel if Ms. Kelly were not in attendance. Finally, Ms. Kelly submitted a signed affidavit stating that she was present during the September 17 executive session. Plaintiff's reply brief does not challenge defendant's assertion that Ms. Kelly was present during the September 17 meeting.

Mr. Mudrick's mental impressions and disclosure would reveal the legal advice given to the board. Mudrick's outline is the third document listed in defendant's privilege log which plaintiff seeks to compel.

Plaintiff does not dispute the general sequence of events described above but adds that board member Janel Johnson called him on September 18 and reported that Ned Nusbaum, former principal of Topeka High School and current U.S.D. 501 board member, said that "all Mark wants to do is sue people and that Mark did ask girls on the basketball team for sex." Doc. 31, p.3. Ms. Johnson apparently also reported that she defended plaintiff in the meeting and that Superintendent Singer "requested a meeting with the lawyers." Doc. 31, p. 3.

Ms. Johnson and plaintiff had another telephone call on October 2 concerning the October 1, 2009 executive session. According to plaintiff, Ms. Johnson reported that Mr. Mudrick "told the board that Mark had been arrested for prostitution, that he cannot be trusted around children and that the district would be negligent in rehiring him." Doc. 31, p. 4. Ms. Johnson also reported that Mr. Mudrick brought up the allegation that plaintiff had made inappropriate comments to girls on the basketball team and "went to great lengths to portray Mark as a sex fiend that cannot be trusted around children." Doc. 31, p. 4. Continuing, Johnson said that Nusbaum again told the other board members that "all Mark wants to do is sue us and that he has sued 3 times" and then repeated allegations regarding the girls' basketball team. Doc. 31, p. 4. Ms. Johnson sent plaintiff an email that same day containing a similar explanation of Mr. Mudrick's presentation: "he said we could be considered negligent by rehiring you–especially if something else happened between you and

a student." Doc. 31-1.

The court is satisfied that the three documents are attorney work product and protected from discovery. The work product doctrine protects: (1) documents or tangible things, (2) prepared in anticipation of litigation, and (3) prepared by or for a party or a representative. Sprint Communications Co. v. Vonage Holdings Corp., 2007 WL 1347754, *4 (D. Kan. May 8, 2007). Clearly, the notes and outline are "tangible things" prepared by attorneys representing the school district. The court is also persuaded that the documents were "prepared in anticipation of litigation." Plaintiff had sued the school district twice before and, in both instances, exhausted his appeals to the Tenth Circuit. Equally important, the Tenth Circuit's most recent ruling specifically left unresolved the issue of whether plaintiff might successfully pursue an employment discrimination claim involving a subsequent refusal to hire. (Brown v. U.S.D. 501, 465 F.3d 1184 (10th Cir. 2006)). Plaintiff brought the same attorney who had represented him in the 2004 lawsuit to the meeting with Superintendent Singer on September 10 and, under the circumstances, litigation was reasonably anticipated when Ms. Kelly prepared her notes. Litigation was also reasonably anticipated when Mr. Mudrick prepared his outline.

Plaintiff argues that he has a substantial need for the documents and cannot, without undue hardship, obtain their substantial equivalent by other means. Doc. 31, p. 10. This conclusory argument is summarily rejected for Kelly's September 10 notes. Both plaintiff and his attorney were present during this meeting and have firsthand knowledge of what transpired during that meeting. The request to compel Ms. Kelly's September 10 notes is

merely an attempt to secure opposing counsel's mental impressions. Similarly, plaintiff has made *no* showing that he is unable to gather non-privileged information concerning the September 17 and October 1 meeting through the use of alternative discovery tools such as interrogatories or depositions of the board members. The request to compel Ms. Kelly's September 17 notes and Mr. Mudrick's outline is an inappropriate attempt to secure counsel's mental impressions and is rejected.

Ms. Kelly's September 17 notes and Mr. Mudrick's outline are also protected by the attorney-client privilege because the school district (1) sought legal advice (2) from an attorney in his/her capacity as such, (3) the communications related to that purpose, and (4) were made in confidence. See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau, 150 F.R.D. 193, 196, n. 4. The privilege protects both the giving of professional advice to those who can act on it as well as the giving of information by the client to the attorney so that sound and informed advice can be provided. Upjohn Co. v. United States, 449 U.S. 383, 389-90 (1981).

Plaintiff contends that the attorney-client privilege has been waived because Ms. Johnson disclosed the content of the communications to him. The court does not agree. "The attorney-client privilege belongs solely to the client and the client may waive it, either expressly or by implication." Case v. U.S.D. No. 233, 1995 WL 477705, *6 (D. Kan. Aug. 11, 1995)(internal citations omitted.) The "client" in this case is Unified School District 501 and plaintiff presents no controlling or persuasive authority that Ms. Johnson, an individual

board member, has authority to waive the district's privilege.[7] Accordingly, Ms. Johnson's disclosure does not waive the attorney-client privilege.

Plaintiff also argues that the attorney-client privilege protects communications but not the underlying facts. The difficulty with this argument is that plaintiff's motion to compel seeks the "communications" with counsel that occurred on September 17 and October 1, 2009.[8] Because the September 17 notes and October 1 outline are a summary of the ***communication*** between counsel and the board, the documents are protected by the attorney-client privilege.

Finally, plaintiff asserts a general challenge to Mr. Mudrick's communications with the school board during the October 1, 2009 executive session, arguing that Mr. Mudrick "made improper and potentially false/misleading statements in his remarks to the board."

---

[7] The organization and powers of boards of education for unified school districts in Kansas are spelled out by state statutes. See K.S.A. 72-8201, et seq. K.S.A. 72-8205 provides "a majority of the full membership of the board shall constitute a quorum for the purpose of conducting any business of the school district, and the vote of a majority of the full membership of the board shall be required for the passage of any motion or resolution." In the absence of a properly approved motion or resolution, a single board member has no authority to act on behalf of the school district or board of education.

[8]
> The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)(citations omitted). The motion to compel in this case seeks discovery of a communication (e.g., What did your attorney say to you?) rather than a fact.

Doc. 52, p. 7, (citing Johnson's October 2 email to plaintiff). The legal theory supporting plaintiff's argument is not entirely clear but appears to be based on some sort of "public policy" or "unique circumstance" argument. However, the court is not persuaded that plaintiff has established a recognized "public policy" or unique circumstance exception that would warrant setting aside the attorney-client privilege. At best, plaintiff has presented evidence that Mr. Mudrick advised the board that the district might face liability if plaintiff were hired and a sexual incident occurred between a student and Mr. Brown. Such communications are run-of-the-mill legal advice. That Mr. Brown, and his advocate on the school board, Ms. Johnson, disagree with Mr. Mudrick's assessment and advice does not negate the privileged nature of the communication. Accordingly, plaintiff's motion to compel production of the documents shall be denied.

### Defendant's Motion for a Protective Order

Plaintiff and defendant have discussed dates for deposing board members Nusbaum and Johnson. Assuming that plaintiff will question the board members about communications that occurred during the two executive sessions, defendant seeks a protective order containing the following provisions:

> Plaintiff and his counsel shall not be permitted to ask any substantive questions about the communications that occurred between the participants at the September 17 and October 1, 2009 executive sessions, and plaintiff shall be precluded from using any evidence of the communications from these executive sessions in this case.

Asserting the same arguments raised above concerning Ms. Kelly's September 10 notes and

Mr. Mudrick's outline, defendant argues that the communications are protected by the attorney-client privilege. Plaintiff opposes the motion, asserting the arguments discussed above.

As previously noted, the court is not persuaded that the attorney-client privilege in this case is waived or somehow voided by (1) the disclosure of information by a single board member or (2) a "public policy" exception. Communications that reflect Ms. Kelly's legal advice on September 17 and Mr. Mudrick's legal advice on October 1 are protected by the attorney-client privilege and a protective order shall be entered prohibiting plaintiff from asking board members "What did your attorney tell you?"

The more difficult issue is whether *all* communications that occurred between the participants at the September 17 and October 1 executive sessions should be governed by defendant's requested protective order. The court is not persuaded, based on the limited record, that a protective order should be entered *at this time* for *all* communications that occurred during those meetings. For example, plaintiff claims that during the September 17 meeting Nusbaum said that plaintiff merely wanted to sue the school district. It is not clear whether Mr. Nusbaum made this statement in the context of (1) communications with counsel for the purpose of securing legal advice or (2) merely as an expression of his personal views to other board members based on prior knowledge of plaintiff's litigation history. Because the context of Mr. Nusbaum's and other board member's "communications" is unclear at this time, the court declines to extend the protective order as broadly as requested by defendant. This ruling is without prejudice to the assertion of the

attorney-client privilege, where appropriately supported, to specific deposition questions to Mr. Johnson and Mr. Nusbaum.[9]

The second part of defendant's motion seeks an order prohibiting the use of "any evidence of the communications from these executive sessions in this case." The court rejects this portion of the proposed order because it is not clear, at this time, that *all* communications during the executive session are protected by the attorney-client privilege. Equally important, the admission of evidence is a matter more appropriately addressed by the trial judge in this case.

---

[9]

Deposition questions to school board members can contain subtle but significant nuances. See Case v. USD 223, 1995 WL 47705, (D. Kan., Aug. 11, 1995)(clarifying prior ruling, noting distinctions between questions to board members revealing legal communications and questions seeking independently formed conclusions). Accordingly, the court is reluctant to adopt the broadly worded protective order suggested by defendant.

-12-

**IT IS THEREFORE ORDERED** that plaintiffs' motion to compel **(Doc. 31)** is **DENIED** and defendant's motion for a protective order **(Doc. 42)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings herein.

Dated at Wichita, Kansas this 13th day of January 2011.

S/ Karen M. Humphreys
KAREN M. HUMPHREYS
United States Magistrate Judge
